```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

JACK W. JORDAN, II                        *      CIVIL ACTION
                                          *
VERSUS                                    *      NO. 09-3542
                                          *
JEWEL MARINE, INC.                        *      SECTION "B"(1)

                         **ORDER AND REASONS**

   Before the Court is Defendant's Motion for Summary Judgment seeking summary judgment of Plaintiff's state law whistle blower claim and alleged exception to the employment at will doctrine. (Rec. Doc. No. 49).

   For the reasons pronounced below, **IT IS ORDERED** that Defendant's opposed (Rec. Doc. No. 51) Motion for Summary Judgment (Rec. Doc. No. 49) is hereby **DENIED.**

                I. *Cause of Action and Facts of Case*

   This case involves a former at-will employee's claims for wrongful discharge allegedly in violation of Louisiana Revised Statute 23:967 ("the Louisiana Whistleblower Act") and the Jones Act exception to the "employment-at-will doctrine. (Rec. Doc. Nos. 1, 51). Jack Jordan was employed by Defendant as a Captain and alleges his employment with Defendant was terminated after he reported that the lead captain of the vessel, Mike Terry ("Terry"), was operating the vessel under the influence of alcohol and

                                    1

marijuana.[1]  Plaintiff was rehired by Defendant on September 8, 2008 and terminated on or about March 23, 2009.  (Rec. Doc. No. 51-2 at 8).

On or about March 6, 2009, Plaintiff reported to Defendant's Operations Manger, Treva Crosby ("Crosby"), that Terry was smoking marijuana on the vessel.  (Rec. Doc. No. 49 at 2).  Terry was subsequently given a drug test and passed the test, without evidence of illegal substances.  Plaintiff does not dispute that series of events.[2]  (Rec. Doc. Nos. 49-5 at 3-4; 49-1 at 2; 51-1 at 2).

Defendant gives several reasons for Plaintiff's termination.  "Mr. Jordan was terminated because one day he gave Treva Crosby an ultimatum – either [] Crosby had to fire the rest of the crew . . . or him."  (Rec. Doc. No. 49-5 at 4).  Defendant states that "[t]herefore, [Plaintiff] was terminated due to his ongoing conflicts with other fellow employees."May 16, 2011  *Id*.

Plaintiff states that he watched Terry smoking marijuana aboard the vessel, that Terry invited Respondent to "smoke a joint with him" and that Terry would state that he was going to smoke marijuana in the engine rooms.  (Rec. Doc. No. 51 at 2).  Respondent also cites testimony of another employee of Defendant,

---

[1]The other Captain with whom Plaintiff and Terry worked on the vessel was named Mike Bonham.  (Rec. Doc. No. 51-2 at 10).

[2]Nor does Plaintiff dispute Defendant's statement that Terry has passed every drug screen during his employment with Defendant.  (Rec. Doc. Nos. 49-1 at 2; 51-1 at 2).

Thomas King, who stated that Terry told him he was able to stay awake "from port to port because '[Terry] said he had a plate of cocaine.'" *Id*. at 3.

II. *Law and Analysis*

A.  Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

B.   <u>La. Rev. Stat. Ann. § 23:967</u>

Louisiana Revised Statute, entitled "Employee protection from reprisal; prohibited practices; remedies" states:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
>> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>>
>> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>>
>> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
>
> B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.
>
> C. For the purposes of this Section, the following terms shall have the definitions ascribed below:
>
>> (1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.
>>
>> (2) "Damages" include compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal.
>
> D. If suit or complaint is brought in bad faith or if it should be determined by a court that the employer's act

> or practice was not in violation of the law, the employer may be entitled to reasonable attorney fees and court costs from the employee.

La. Rev. Stat. Ann. § 23:967.

In *Accardo v. Louisiana Health Services & Indem. Co.*, 943 So.2d 381 (2006), the Louisiana First Circuit Court of Appeal addressed the issue of whether § 23:967 requires an actual violation of state law. Noting that the Louisiana Supreme Court has not addressed the issue, the First Circuit pointed out that the Louisiana Fourth and Fifth Circuit Courts of Appeal had. The *Accardo* court stated:

> [W]e note that the inclusion of the requirement of good faith in La. R.S. 23:967 creates an appearance of ambiguity as to whether an actual violation of law must be established. However, based on the legislative history of the statute, which deleted the phrase "reasonably believes is in violation of law" and substituted the phrase "that is in violation of state law", it [] appears that the legislature intended the requirement of a violation of state law. Although we have grave concerns regarding the chilling effect that this requirement will have on the reporting by an employee of illegal acts, we are compelled to conclude that the Louisiana Whistleblower Statute, La. R.S. 23:967, requires an employee to prove an actual violation of state law in order to prevail on the merits of the case.

*Accardo*, 943 So.2d at 386-87. Indeed, the United States Court of Appeals for the Fifth Circuit, in affirming the lower court's ruling in an unpublished opinion stated "[a] violation of state law is an element of the claim." *Diaz v. Superior Energy Services, LLC*, 341 Fed.Appx. 26 (5th Cir.2009).

The lower court's opinion in *Diaz*, authored by Magistrate

Judge Wilkinson, involved a pro se plaintiff who brought a retaliation claim against his former employer pursuant to La. R.S. 23:967.  Plaintiff there "allege[d] vaguely that [Defendant] violated unspecified federal laws by conspiring to influence a [U.S.C.G.] Inspector . . . ." *Diaz v. Superior Energy Services, LLC*, No. 07-2805, 2008 WL 3077071 (E.D. La. Aug. 4, 2008). *Diaz* is distinguishable from the instant case in that Plaintiff here alleges violations of specific state and federal law.  Plaintiff's "complaints concern actual violations of state law, namely possession of marijuana, which is unlawful pursuant to La. R.S. 40:966,  and operating a vehicle while intoxicated, which is unlawful pursuant to La. R.S. 14:98." (Rec. Doc. No. 51 at 8).

Magistrate Judge Wilkinson further listed four factors as requisites to a cognizable claim under La. R.S. 23:967:

> To survive summary judgment on his whistleblower claim, Diaz must establish that (1) his employer violated the law through a prohibited workplace act or practice; (2) he advised his employer of the violation; (3) he then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) he was fired as a result of his refusal to participate in the unlawful practice or threat to disclose the practice.  Failure to put forth evidence to satisfy any of these elements must result in a summary judgment in favor of his employer.

*Diaz*, 2008 WL 3077071 at *8.  *Assuming arguendo* that Plaintiff's testimony that he witnessed Terry smoke marijuana and consume alcohol, along with Defendant's employee Thomas King's testimony that Terry's "substance abuse escalated from February 2008 to November 2008" satisfy the first part of the test above, similar

testimony establishes the second prong. (Rec. Doc. No. 51 at 2).

Defendant states that, if this is so, Plaintiff's claims must fail as he cannot satisfy the third and fourth prongs of the above enunciated requisites. However, Plaintiff contends he advised Defendant on more than one occasion of Terry's behavior. Plaintiff states that his "continuing objections [] reflect that he refused to participate in the employment or practice." (Rec. Doc. No. 51 at 9). As for the fourth prong, Plaintiff testified that, after his March complaint about Terry to Defendant, a deck hand cornered him in the pilot house of the vessel and intimidated Plaintiff regarding Plaintiff's complaint about Terry. *Id*. Plaintiff reported this action to Crosby who then took no action. Citing this failure to act as ratification of the deck hand's behavior, Plaintiff points out that the "temporal proximity between Plaintiff"s March 4, 2009 report and his March 17, 2009 termination, is evidence of causation." *Id*. at 10. (citing *Smith v. Xerox*, 584 F. Supp 2d 905, 915 (N.D. Tex. 2008)).

C. <u>Public Policy Exception</u>

Plaintiff's complaint alleges that his "termination violates clearly important public policy, namely, protecting the safety not only of seamen, but the public as well. 46 U.S.C. § 10901 *et seq*." (Rec. Doc. No. 1 at 2).

46 U.S.C. § 10902(a)(1) states, in pertinent part:

> If the chief and second mates . . . of a vessel ready to begin a voyage discover, before the vessel leaves harbor, that the vessel is unfit as to crew . . . to proceed on the intended voyage and require the unfitness to be inquired into, the master immediately shall apply to the district court of the United States at the place at which the vessel is located, or, if no court is being held at the place at which the vessel is located, to a judge or justice of the peace, for the appointment of surveyors. At least 2 complaining seamen shall accompany the master to the judge or justice of the peace.

The text of the statute, as written, does not appear to require a report be made, indeed two requirements appear. "If the chief . . . [1] discover[s] the vessel is unfit . . . and [2] require[s] the unfitness to be inquired into . . . ." 46 U.S.C. § 10902(a)(1). The Ninth Circuit, discussing 46 U.S.C. § 10901-908 stated "[t]he statutes create a means of quasi-self-regulation: members of the crew are empowered to initiate a court-supervised inspection of conditions they believe are unfit."[3]

Defendant notes Plaintiff's deposition testimony in which Plaintiff stated that he did not report his concerns regarding Terry's alleged drug use to anyone other than Defendant. (Rec. Doc. No. 49-5 at 11). Defendant states that, given the statute and Plaintiff's "admission", Plaintiff "cannot rely on 46 U.S.C. §

---

[3] *Herman v. Tidewater Pacific, Inc.*, 160 F.3d 1239, 1242 (9th Cir.1998) *But cf. U.S. v. Rivera*, 131 F.3d 222, 224 n.4 (1st Cir.1997) (stating that a "master receiving such a complaint is then required to apply to a district court of the United States for the appointment of '3 experienced and skilled marine surveyors to examine the vessel for the defects or insufficiencies complained of.'"

10901 et seq, for he did not comply with those statutes; so logically, he could not have been fired for his compliance with those statutes." *Id*. The unwritten and flawed logical step implied by Defendant's motion is that Plaintiff could only rely on those statutes had he been fired for compliance therewith. Defendant cites neither statute nor case law to support the proposition that Movant was required to notify any other party.

In *Smith v. Atlas Off-Shore Boat Service*, 653 F.2d 1057 (5th Cir.1981), a seamen was fired for maintenance of a Jones Act personal injury claim against his former employer. The Fifth Circuit stated:

> The maritime employer may discharge the seaman for good cause, for no cause, or even, in most circumstances, for a morally reprehensible cause. We conclude, however, that a discharge in retaliation for the seaman's exercise of his legal right to file a personal injury action against the employer constitutes a maritime tort.

*Id*. at 1063. In finding an exception to the employment at will doctrine, the *Smith* court stated "[w]hether grounded in tort or contract, the cause of action is based on the notion that the employer's conduct in discharging the employee constitutes an abuse of the employer's absolute right to terminate the employment relationship when the employer utilizes that right to contravene an established public policy." *Smith*, F.2d at 1062.

Defendant cites *Feemster v. BJ-Titan Services Co.*, 873 F.2d 91

(5th Cir.1991) in which the Fifth Circuit affirmed the District Court's grant of summary judgment against tugboat captain who refused to sale an eighteen hour voyage claiming it violated a federal statute restricting vessel operation to twelve hours in any twenty four hour period.[4] Distinguishing the holding in *Smith*, the court stated "[i]n *Smith* we acknowledged that . . . . a seaman has a cause of action if a substantial motivating factor in his discharge is the filing of a Jones Act action against his Employer." *Id*. at 92. In that case, Feemster conceded that the statute did not grant him a "personal right to refuse a management directive with which he disagreed, even if it violated a safety statute." *Id*. at 93. The court found that the statute at issue did not create a private cause of action and so affirmed the prior grant of summary judgment.

Defendant's argument that the instant case is analogous to *Feemster* save for that here "there is no violation of any statute" disregard the genuine issues of fact already discussed *supra*. (Rec. Doc. No. 49-5 at 12). The same can be said for the assertion that the "same reasons . . . why [Plaintiff cannot prove an actual violation under the Louisiana Whistleblower Statue apply here to defeat his claim under the employment-at-will doctrine." *Id*.

Plaintiff cites *Borden v. Amoco Coastwise Trading Company*, 985

---

[4] The statute at issue in *Feemster* was 46 U.S.C. § 8104(h). *Id*. at 93.

F.Supp. 692, 697 (S.D. Tex. 1997), denying Defendant's summary judgment motion in a wrongful discharge suit brought by captain of an ocean-going tug who twice refused to sail due to storms in which the district court discussed both *Smith* and *Feemster* from.  (Rec. Doc. No. 51 at 12).  Defendant moved for summary judgment arguing (1) no exception to the employment at will doctrine existed based on the facts (2) that if an exception existed, Plaintiff was not ordered to violate the law and (3) that if an exception was found to exist, that Plaintiff was not solely terminated for his refusal to violate law.  *Id*. at 694.

> In *Smith*, the Fifth Circuit acknowledged the stringency of the employment-at-will doctrine, but recognized that an exception to this doctrine exists when the employee's termination violates *clearly important public policy*. Thus, reading Feemster in light of Smith, the primary inquiry is whether public policy considerations in particular factual circumstances are sufficient to override the at-will doctrine. Simply stated, clearly important public policy concerns were not at issue in Feemster. Such concerns were at issue in Smith, and such concerns are at issue here.

*Id*. at 697 (internal parentheticals omitted)(emphasis in original). The district court noted that the safety at issue in *Feemster* involved overtime labor and the safety at issue in *Borden* involved two leaks found in the ship and a resultant feat that the ship would spill paraxylene, a chemical classified as "extremely toxic and harmful to aquatic life" by the Coast Guard.  *Id*. at 698.

In the case *sub judice*, insuring the safety of both seamen and

the general public, potentially by preventing Captains under the influence of drugs and alcohol from manning vessel, is certainly a an matter of public policy. Plaintiff has raised issues of fact in this regard that preclude summary judgment.

### III. *Conclusion*

Plaintiff has barely raised a genuine issue of material fact such that summary judgment at this stage is precluded. Additionally, there exist genuine issues of fact surrounding Plaintiff's claims of an exception to the employment-at-will doctrine under the Jones Act, specifically with regard to the public policy implications outlined *supra, albeit with a weak* factual foundation for same.

New Orleans, Louisiana, this 25TH day of May, 2011.

_____
UNITED STATES DISTRICT JUDGE